UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER A. TORMASI,<br><br>    Plaintiff,<br><br>v.<br><br>WESTERN DIGITAL CORP.,<br><br>    Defendant. | Case No. 19-cv-00772-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 19, 27, 24, 29 |

Pending before the Court is Defendant Western Digital Corporation's motion to dismiss. Dkt. No. 19. Defendant argues that Plaintiff Walter A. Tormasi lacks standing to bring suit because he does not hold title to United States Patent Nos. 7,324,301 ("the '301 Patent") and lacks capacity to sue because he is an inmate prohibited from conducting business. Defendant also argues that Plaintiff fails to plausibly allege willful patent infringement. For the reasons explained below, the Court **GRANTS** the motion.

## I. BACKGROUND

Plaintiff filed this action on February 12, 2019, alleging infringement of the '301 Patent. Dkt. No. 1 ("Compl."). The '301 Patent is titled "Striping Data Simultaneously Across Multiple Platter Surfaces" and "pertains to the field of magnetic storage and retrieval of digital information." *Id.* ¶ 1, Ex. C.

Independent claim 41 describes:
> 41. An **actuator mechanism,** said mechanism comprising at least two arms, said arms assigned to different circular carrier surfaces within an information storage and retrieval apparatus; and means for moving said arms simultaneously and independently across corresponding carrier surfaces with a component of movement in a radial direction with respect to said carrier surfaces.

*Id.* Ex. C at 12:5–11. Numerous claims depend from Claim 41, including, as relevant here Claim 61:

> 61. The mechanism of claim 41 wherein said actuator mechanism comprises a primary actuator and at least two secondary actuators, wherein the primary actuator comprises at least two primary arms, said primary arms being only unitarily movable; and the secondary actuators are subdevices that are individually affixed to the tip of each primary arm, with each said secondary actuator supporting one read/write member, wherein in its operative mode, said primary actuator executes means for providing initial general positioning by unitarily moving said secondary actuators to an approximate radial positions; and in its operative mode, said secondary actuators execute means for providing precise independent secondary position by independently moving said read/write members to specific radial positions corresponding to particular concentric circular tracks on the respective carrier surfaces.

*Id.* Ex. C. at 12:61–13:9. Nine claims depend from Claim 61 and add further limitations such as (1) "wherein said secondary actuators are microactuators" (Claim 62) and (2) "wherein secondary actuators are microelectromechanisms" (Claim 63). *Id.* Ex. C. at 13:10–13. Plaintiff alleges that "Defendant manufactures, markets, sells, distributes and/or imports hard disk drives . . . containing dual-stage actuator systems comprising primary and secondary actuation devices," which "feature every structural element and limitation of claims 41, 61, 62, and 63" of the '301 Patent. *Id.* ¶ 21, 26.

On April 25, 2019, Defendant filed the pending motion to dismiss, for which briefing is complete. Dkt. No. 19 ("Mot."), 23 ("Opp."), and 26 ("Reply"). Plaintiff filed a related administrative motion for nunc pro tunc objection to evidence in Defendant's Reply, Dkt. No. 27, and a motion to strike Defendant's response to Plaintiff's administrative motion, Dkt. No. 29.

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw

2

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### III. ANALYSIS

Defendant argues that Plaintiff lacks standing to bring suit because he does not hold title to the '301 Patent and lacks capacity to sue because he is prohibited from operating a business since he is an inmate in the New Jersey Department of Corrections. Mot. at 12–19. The Court need not reach the standing issue, since even if Plaintiff does have standing to assert these claims (which the Court does not now decide), Plaintiff lacks capacity to sue.

An individual's capacity to sue is determined "by the law of the individual's domicile." Fed. R. Civ. P. 17(b). Plaintiff is domiciled in New Jersey. Defendant argues that because New Jersey law prevents inmates from "commencing or operating a business or group for profit or commencing or operating a nonprofit enterprise without the approval of the Administrator," Plaintiff lacks capacity to bring this patent infringement suit. N.J. Admin. Code § 10A:4-4.1(.705). The Court agrees.

Plaintiff argues that his personal right to access the courts is at issue, and that the New Jersey regulation cannot "supersede Plaintiff's right to file civil lawsuits in his personal capacity." Opp. at 11. However, Plaintiff's case materials and previous cases makes clear that what underlies this case is his purported right to conduct business, not his access to the courts. *See* Dkt. No. 1 ¶ 1

3

("Plaintiff is an innovator and entrepreneur"); Dkt. No. 23-1 at ¶ 14–15 (detailing that after being sanctioned for "operating [his company, Advanced Data Solutions Corp. ("ADS"),] without administrative approval," Tormasi did not cease such activities, but instead engaged in "ownership-transferring contingencies" to continue as a sole proprietor). *See also Tormasi v. Hayman*, 443 F. App'x 742, 745 (3d Cir. 2011) (holding that there was no 42 U.S.C. § 1983 violation because Tormasi's confiscated patent application "f[ell] within the ambit of" prohibited business activities).

That Plaintiff has filed this patent infringement case without ADS does not change this reality. Plaintiff previously represented that because he assigned ADS all of his interest in the patent, "he was 'unable to directly or indirectly benefit from his intellectual-property assets, either by selling all or part of ADS; by exclusively or non-exclusively licensing [the] patent to others; by using ADS or [the] patent as collateral for obtaining personal loans or standby letters of credit; or by engaging in other monetization transactions involving ADS or its intellectual-property assets." *Tormasi*, 443 F. App'x at 745. Thus, Plaintiff argued that he was not running afoul the New Jersey regulation for conducting business. *Id.* Now, however, Plaintiff includes an "Assignment of U.S. Patent No. 7,324,301" assigning "all right, title, and interest" in the '301 Patent from ADS back to him. Dkt. No. 1-1. This contradicts his previous representation, and suggests that he may now directly benefit from his patent assets. Indeed, this appears to be exactly what he seeks to do in this case by monetizing his patents and obtaining $5 billion in compensatory damages for patent infringement, in contravention of the New Jersey regulations. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Stroud v. Swope*, 187 F.2d 850, 851 (9th Cir. 1951) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). While the Fourteenth Amendment protects the right of access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 828 (1977), it does not guarantee the right to freely conduct business, *see Stroud*, 187 F.2d at 851.[1] Accordingly, the

---

[1] Tormasi also cites the First Amendment as guaranteeing access to the courts. This right of access, however, does not grant "inmates the wherewithal to transform themselves into litigating engines capable of filing everything," but rather is limited to cases in which inmates "attack their sentences, directly or collaterally, and . . . challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly

4

Court finds that Plaintiff, as an inmate of the New Jersey Department of Corrections, lacks the capacity to sue for patent infringement.[2]

## IV. CONCLUSION

Because Plaintiff lacks capacity to sue under Rule 17(b), the Court **GRANTS** Defendant's motion to dismiss with prejudice. As noted above, the Court **DENIES AS MOOT** docket numbers 27 and 29. The Court additionally **DENIES** docket number 24 and the clerk is directed to terminate the case.

**IT IS SO ORDERED.**

Dated: 11/21/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Tormasi*, 443 F. App'x at 744 n.3.
[2] The Court need not reach Defendant's arguments that the complaint should be dismissed for failure to plausibly plead willful infringement or indirect infringement under Rule 12(b)(6). Mot. at 19–23.